# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER CONNOLLY,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 1:15-cv-718-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

Plaintiff Christopher Connolly ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act.[1] The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Barbara A. McAuliffe. The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

///

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to conduct all further proceedings in this case before the Honorable Barbara A. McAuliffe, United States Magistrate Judge. (Docs. 6, 7).

1

## FACTS AND PRIOR PROCEEDINGS

On May 14, 2012, Plaintiff filed his current application for SSI, alleging disability beginning June 27, 1993. AR 19.[2] Plaintiff's application was denied initially and on reconsideration. AR 101-108. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ Susanne Lewald held a hearing on October 11, 2013, and issued an order denying benefits on November 19, 2013. AR 19-27. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-3. This appeal followed.

### Plaintiff's Testimony

The ALJ held a video hearing on October 11, 2013, from San Francisco, California. AR 29-54. Plaintiff appeared and testified in Bakersfield, California. AR 31. He was represented by non-attorney representative Diana Wade. AR 42. Also appearing and testifying were Kathy Connolly, Plaintiff's mother, Vocational Expert Kenneth Ferra, and Medical Expert Faren Akins. AR 42.

Plaintiff alleges disability based on his learning disorder, attention deficit hyperactivity disorder, and other deficiencies in his cognitive functioning. AR 76.

The ALJ initially heard testimony from medical expert Faren Akins, M.D. AR 45. After reviewing the medical records, Dr. Akins opined that Plaintiff's IQ test scores do not support a mild mental retardation diagnosis; nor does Plaintiff meet or equal a listing to support a mental retardation diagnosis. AR 45. Instead, Plaintiff experiences borderline intellectual functioning. AR 46. Plaintiff's attention deficit disorder was described as being reasonably well-controlled. AR 46.

Plaintiff was born on June 27, 1993, and was 20 years old at the time of the hearing. AR 51. Plaintiff testified that after taking special education classes, he "completed" high school after receiving a high school exit exam waiver. Prior to obtaining the waiver, Plaintiff testified that he failed the exit exam five times. AR 51. While in high school, Plaintiff worked for two years as a food handler in the cafeteria at Kern Valley High School. AR 54. After completing high school, Plaintiff testified that he began enrollment in a two-year program at Taft College that teaches him how to live on his own, pay bills, and how to work independently. AR 52.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff feels he is unable to perform a full time job because he suffers from forgetfulness. AR 56. Plaintiff testified that in order to work he would need reminders and would be confused. AR 56.[3]

In a typical day when Plaintiff is not in school he attends church or plays his X-Box with friends or neighbors. He takes care of his own hygiene, but does not cook, do laundry, or operate the dishwasher. AR 58-60. He has difficulty remembering to do chores, can make his bed, is not allowed to use the stove, has a bank account but does not know the balance, has difficulty with oral and written instructions and does not always understand what he reads. AR 61.

The ALJ also heard testimony from Plaintiff's Mother, Kathy Connolly. AR 62. Mrs. Connolly testified that Plaintiff has not learned to drive because he cannot read the handbook, has difficulty retaining information, needs reminders to do chores and cannot do laundry. AR 63-65. Plaintiff's mother testified that he could probably perform a simple sorter job, but he would have to be reminded to get up and go to work. AR 65. She testified that Plaintiff is easily distracted; he can maintain concertation for up to twenty minutes at a time. AR 67.

**Medical Record**

The entire medical record was reviewed by the Court. AR 174-433. The medical evidence will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 19-27. More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since May 14, 2012. AR 21. Further, the ALJ identified borderline intellectual functioning, history of attention deficit hyperactivity disorder ("ADHD"), and history of learning disorder as severe impairments. AR 21. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 21.

Based on her review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform full work at all exertional levels, with limitations to simple, repetitive one-step tasks requiring no more than rudimentary reading, writing, and arithmetic

---

[3] At the time of the hearing, Plaintiff's admission process was not yet complete.

skills. AR 23. Plaintiff has no past relevant work; however, based on Plaintiff's age, education, and RFC, the ALJ determined that significant jobs exist in the national economy that Plaintiff could perform. AR 25. The ALJ therefore found that Plaintiff was not disabled under the Social Security Act. AR 27.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger,* 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commission must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commission's findings are supported by substantial evidence. *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987); *see also Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 2002).

## DISABILITY STANDARD

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir.

1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION

Plaintiff raises three arguments challenging the ALJ's decision. Plaintiff contends the ALJ erred when she: (1) deviated from the DOT without sufficient explanation; (2) improperly weighed the medical evidence; and (3) improperly discredited Plaintiff's subjective symptoms. (Doc. 15).

### 1. Step Five of the Sequential Evaluation Process

At Step five of the sequential valuation process, the ALJ opined that Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: perform no more than simple, repetitive one-step tasks requiring no more than rudimentary reading, writing and arithmetic skills. AR 23. At the hearing, the ALJ heard testimony from Vocational Expert Ferra. AR 73-74. During his testimony, the ALJ asked the VE to explain the difference between a one-step task and a two-step task. AR 72. VE Ferra explained that a one-step task would require performing one task such as "packing fruit into a box" "all day long and packaging" whereas "if the person had to take that box and…move it somewhere else, maybe take it and walk 10 feet and place it on a pallet, that would probably be considered a two-step task." AR 73.

The ALJ then asked the VE a hypothetical question assuming whether a person of Plaintiff's age, education, and experience with no exertional limitations, who could perform simple, repetitive, one step tasks not requiring more than rudimentary reading, writing, and arithmetic skills could perform work as it exists in the national economy. AR 73. The VE found an individual with Plaintiff's RFC could perform the work of a packing line worker, sorter, and ticket taker. AR 73; DICOT 753.687-038 (G.P.O.), 1991 WL 680354; DICOT 529.687-186 (G.P.O.), 1991 WL 674781; DICOT 344.667-010 (G.P.O.), 1991 WL 672863. The expert then eroded the job numbers to accommodate the one-step limitation. AR 73-74.

Plaintiff raises two challenges to the ALJ's Step Five analysis. Plaintiff first asserts that the ALJ erred in finding that Plaintiff could perform the representative occupations of packing line worker and ticket taker. (Doc. 15 at 5). Specifically, Plaintiff asserts that the VE's testimony conflicted with the DOT because the jobs of packing line worker and ticket taker require an ability to

5

understand Level 2 math and Level 2 language, respectively. Second, Plaintiff challenges whether a significant number of available "sorter" positions exist in the economy. (Doc. 15 at 7).

### A. Alleged Conflict Between VE's Testimony and the DOT

With respect to Plaintiff's first challenge, Plaintiff contends that because he is limited to reading at a third-fourth grade level and performing math skills at an eighth grade level he does not have the requisite skill set to perform the work of a packing line worker and ticket taker. (Doc. 15 at 5-7); AR 389. According to Plaintiff, the DOT defines the job of a packing line worker as requiring an individual to have the ability of understanding Level 2 Math. DICOT 753.687-038 (G.P.O.), 1991 WL 680354. The DOT defines Level 2 Math as: add, subtract, multiply, and divide all units of measure. Perform the four operations with like common and decimal fractions. Compute ratio, rate, and percent. Draw and interpret bar graphs. Perform arithmetic operations involving all American monetary units. *Id.* The DOT defines the job of a ticket taker as requiring an individual to have the ability to read at a Language Level 2. DICOT 344.667-010 (G.P.O.), 1991 WL 672863. The DOT defines Language Level 2 as having a passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes. *Id.*

In response, the Commissioner makes two arguments. First, she argues that there is no apparent conflict with the DOT as Plaintiff's language and math abilities do not preclude him from performing jobs as a ticket taker and/or packing line worker. Second, to the extent that a conflict exists, the VE elicited a reasonable explanation as to why Plaintiff could perform the representative tasks despite his limited math and language skills. (Doc. 16 at 2-7).

At step five the burden shifts to the Commissioner to show that there is other work that exists in the national economy that the claimant is able to perform. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). In determining whether such jobs exist, the ALJ will generally consult the DOT and use the services of a vocational expert. *Light v. Social Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997); 20 C.F.R. § 404.1566(d) and (e). An ALJ cannot rely on the VE's testimony without inquiring whether it conflicts with the DOT and obtaining a reasonable explanation for any apparent conflict. *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). Evidence that is sufficient to

permit a deviation from the DOT may be specific finding of fact as to the claimant's residual functional capacity or inferences that can be drawn from the context of the VE's testimony. *Light*, 119 F.3d at 793.

At the outset, the Court disagrees with Plaintiff's argument that there is an apparent conflict between the DOT and the vocational expert's testimony. Nothing in the DOT narrative job descriptions for the jobs of packing line worker and ticket taker compels the conclusion that more than rudimentary math and language skills are required to perform those jobs. The DOT, in job description 344.667–010, describes ticket taker as follows:

> Collects admission tickets and passes from patrons at entertainment events: Examines ticket or pass to verify authenticity, using criteria such as color and date issued. Refuses admittance to patrons without ticket or pass, or who are undesirable for reasons, such as intoxication or improper attire. May direct patrons to their seats. May distribute door checks to patrons temporarily leaving establishment. May issue and collect completed release forms for hazardous events, and photograph patron with release form for permanent records file. May be designated Gate Attendant or Turnstile Attendant when collecting tickets at open-air event.

Dictionary of Occupational Titles 344.667–010, 1991 WL 672863.

The DOT, in job description 753.687-038, describes packing line worker as follows:

> Performs any combination of following tasks as member of conveyor line crew to finish and pack plastic or rubber footwear: Sorts and mates pairs and places them on conveyor. Opens or closes buckles, snaps fasteners together, inserts laces in eyelets, and ties loops (frogs) around buttons. Counts and tallies production or records on counter. Wraps pair in tissue, places them in shoe box, and packs boxes in cartons. Places rejects in boxes or racks for repair or mating.

Dictionary of Occupational Titles 753.687-038, 1991 WL 680354.

The record demonstrates that Plaintiff has an eighth grade math equivalency level and third to fourth grade reading level. AR 262, 316. Plaintiff's special education teacher stated that Plaintiff "is very strong in the area of mathematics." AR 274. Plaintiff further "demonstrates the ability to add, subtract, multiply, and divide single and double digit numbers. He is also capable of solving easy fraction and decimal problems, but struggles with converting between standard and expanded notations of numbers." AR 275. Plaintiff was also reported as having an extensive vocabulary. AR 313.

7

While Plaintiff asks the Court to find an inconsistency between his reading and math scores and the Level 2 math and language scores required by the DOT, this argument is misguided. At least one Court in this district has recognized that "a reading level 2 equates to a fourth to sixth grade level." *See Loyha v. Astrue*, 2010 U.S. Dist. LEXIS 68951, 2010 WL 2737158, at \*\*28-29 (E.D. Cal. July 9, 2010). Plaintiff's ability to read at a fourth grade level falls within this range and is therefore not directly in conflict with the DOT. As to Plaintiff's math ability, the record demonstrates that he maintains ability to perform math at or above Level 2. Plaintiff can add, subtract, multiply and divide as well as work with fractions and decimals. AR 275. The Court therefore finds no inconsistency between Plaintiff's reading and math levels and the vocational expert's assessment that Plaintiff could perform jobs as a ticket taker or packing line worker. The ALJ therefore could properly rely on this portion of the vocational assessment. *See Wester v. Colvin*, 2015 U.S. Dist. LEXIS 100542, 2015 WL 4608139, at \*6 (C.D. Cal. July 31, 2015) (stating that "[c]ourts have rejected claims based on conflict" at step five "when a DOT description does not, on its face, conflict with the claimant's RFC if the VE's testimony or the tasks described by the DOT confirm that the job would accommodate the claimant's limitations").

Second, the VE offered a sufficient explanation to resolve any potential conflicts with the DOT. *See Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency before he may rely on the former in support of his step five determination." The ALJ's hypothetical based on Plaintiff's RFC included a limitation to rudimentary reading, writing, and arithmetic skills. AR 22. Prior to asking the VE that hypothetical question, the ALJ noted that while she "frequently make[s] reference to one and [two] step tasks," the ALJ was particularly interested in a distinction between one-step tasks and two-step tasks. AR 72-73. Acknowledging that some sorter, packing line worker, or ticket taker jobs may require more than one-step, the VE eroded the occupation base by 50% to eliminate jobs Plaintiff cannot perform because they require two-step tasks. The logical inference is that the VE eliminated jobs that would require Plaintiff to perform reading, writing or math beyond a rudimentary level. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that the

ALJ is entitled to make logical inferences from the evidence).  Thus, a reasonable explanation exists in the record to accommodate for an inconsistency, if any, between the VE's testimony and the DOT. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record"); *Smith v. Colvin*, 2016 WL 3456906, at *2 (C.D. Cal. 2016) (Even if DOT inconsistency existed, VE sufficiently stated claimant could perform certain jobs).

For the above reasons, the vocational expert properly found that Plaintiff could perform the packing line worker and ticket taker positions even in light of his math and reading abilities.  On this record, the reliance by the ALJ on the vocational expert's testimony was proper.

### B.   Number of Jobs Available

Plaintiff also argues that regardless of any unresolved conflict, there are an insufficient number of sorter jobs available to satisfy the Step Five requirement that a substantial number of jobs exist which Plaintiff could perform. (Doc. 15 at 7). Plaintiff does not challenge the appropriateness of the sorter position—having reasoning, language and math levels of 1—but instead argues that the number of jobs available after a 50% erosion from 38,000 at the national level and 3,800 jobs at the local level, does not leave a sufficient number of jobs.  AR 73-74.

In order to find that an individual is not disabled, the ALJ must determine that a "significant" number of jobs exist for that person "in the national economy," which is defined as "either the region where [the claimant] live[s] or in several regions in the country." 20 C .F.R. § 404.1560(c). Whether the number of jobs that exist in the national economy is "significant" is a question of fact for the ALJ. *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir.1986).

*Relying on Gutierrez v. Comm'r*, 740 F.3d 519 (9th Cir. 2014), Plaintiff argues that the *Gutierrez* court found 25,000 national jobs "a close call" to constitute a significant number of jobs. *Gutierrez*, 740 F.3d at 529. Plaintiff contends that based on *Gutierrez*, 19,000 jobs does not constitute a significant number of jobs. The Ninth Circuit in *Gutierrez*, however, did not establish a minimum of 25,000 jobs as a baseline. *Acuna v. Colvin*, 2015 U.S. Dist. LEXIS 158948, 2015 WL 7566624 **7-8 (C.D. Cal. Nov. 24, 2015) (Gutierrez does not create a baseline for a minimum number of jobs).  Rather, it found that "25,000 jobs likely does not fall into the category of 'isolated

jobs' existing in 'very limited numbers.'" *Gutierrez*, 740 F.3d at 529. The Court found that its precedent did not preclude the possibility that 25,000 jobs constitutes a significant number and noted that another circuit court had found 10,000 national jobs to be a significant number. *Id.*

Nonetheless, even if 19,000 jobs nationally and 1,900 jobs locally may also be a close call, the Court finds—as have other courts, post-*Gutierrez*—that over one thousand jobs locally and over ten thousand nationally is sufficient. *See, e.g., Gaston v. Commission of SSA*, 577 Fed Appx 739, 742 (9th Cir. 2014) (upheld as significant 1,240 in the local economy and 142,000 jobs in the national economy); *De Rivera v. Colvin*, 2016 U.S. Dist. LEXIS 67588, 2016 WL 2982183 *3 (C.D. Cal. May 23, 2016), appeal docketed, No. 16-55884 (9th Cir. June 23, 2016) (5,000 jobs nationally and 500 jobs regionally constitute a significant number, relying on a consideration of both figures); *Evans v. Colvin*, 2014 U.S. Dist. LEXIS 107921, 2014 WL 3845046 *1 (C.D. Cal. Aug. 4, 2014) (6,200 jobs nationally and 600 jobs regionally constitute a significant number, relying on a consideration of both figures); *see also* pre-*Gutierrez* cases: *Barker v. Sec'y of HHS*, 882 F.2d 1474, 1478-79 (9th Cir. 1989) (1,266 jobs regionally constitute a significant number); *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (between 1,000 and 1,500 jobs regionally constitute a significant number); *Peck v. Colvin*, 2013 U.S. Dist. LEXIS 86444, 2013 WL 3121280 *5 (C.D. Cal. June 19, 2013) (14,000 jobs nationally and 1,400 jobs regionally constitute a significant number, relying on a consideration of both figures); *Hoffman v. Astrue*, 2010 U.S. Dist. LEXIS 26207, 2010 WL 1138340 *15 (W.D. Wash. Feb. 8, 2010) (9,000 jobs nationally and 150 jobs regionally constitute a significant number, relying on a consideration of both figures).

Consequently, Plaintiff has not shown error on this issue.

### 2. The ALJ Properly Evaluated the Medical Opinion Evidence

In his next issue, Plaintiff argues that the ALJ improperly rejected portions of Plaintiff's examining physician's opinion. (Doc. 15 at 7). The Commissioner asserts, however, that the ALJ considered the entire medical record and properly gave specific and legitimate reasons for rejecting the portions of Dr. Hawkins opinion that were not supported by the record. (Doc. 16 at 8-9).

### A. Legal Standard

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Id.* (citing *Winans v. Bowen*, F.2d 643, 647 (9th Cir. 1987)). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate" reasons supported by substantial evidence in the record for doing so. *Id.* (citing *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Notwithstanding the above discussion, an ALJ is not required to accept an opinion of a treating physician, or any other medical source, if it is conclusory and not supported by clinical findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a medical source's opinion concerning a claimant's limitations on the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the medical source's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir.1999).

### B.     Analysis

Plaintiff argues that the ALJ did not provide specific and legitimate reasons for rejecting the portions of the examining physician's opinion that Plaintiff "could not perform competitive work and would need a structured environment." (Doc. 15 at 10). The Court disagrees and finds that Plaintiff's argument is misguided. In evaluating the medical evidence, the ALJ gave a detailed summary of the educational records and outlined the basis for her conclusions. The ALJ then provided specific and legitimate reasons to discount certain findings by examining physician, Kimball Hawkins, Ph. D.

Dr. Hawkins, at the request of the Kern Regional Center, was asked to evaluate Plaintiff's level of intellectual and adaptive functioning. AR 388-391. Dr. Hawkins provided the following summary:

> Today's testing shows Christopher Connolly having scores in the low average to borderline deficit range on intellectual and adaptive measures administered and having academic achievement at a third grade level in word recognition and an eighth grade level in math. He had some low average subtest scores on the intellectual measure but most of his scores fell in the borderline deficit range. He has been diagnosed as having a learning disability in his educational setting. He was retained in kindergarten and the fourth grade. Current indications are that he is in need of vocational training, Resource Specialist Program classes, and it is believed that he would be more of a candidate for supported work rather than competitive employment based on these test results.

With regard to the consultative examiner's opinion, the ALJ found:

> In August 2011, Kimball Hawkins, Ph. D., performed a consultative psychological evaluation and noted that the claimant ascertained a full-scale IQ of 72 and he had a 3.9 word reading grade equivalence and an 8.0 math computation grade equivalence. Dr. Kimball had the diagnoses of history of learning disorder and borderline intellectual functioning and opined that he was in need of vocational training and would be a candidate for supported work.
>
> …
> The opinion of Dr. Hawkins is given significant weight concerning the diagnosis of borderline intellectual functioning because it was based on objective testing. However, Dr. Hawkins opinion that the claimant would have difficulty keeping competitive employment is given little weight for the following reasons: the claimant graduated from high school; her opinion was vague; and the claimant's ability to perform numerous activities independently is inconsistent with her opinion.

AR 24-25.

The ALJ instead gave "great weight to the opinion of Dr. Akins, M.D. because she reviewed the record and is familiar with the disability program." AR 25.

Contrary to Plaintiff's contention, the ALJ did identify specific objective evidence in the medical record she relied on when adopting portions of Dr. Hawkins' opinion. Initially, the ALJ weighed Dr. Hawkins opinion against the testimony of Dr. Akins, a non-examining physician who testified as a medical expert at the administrative hearing. AR 45-50. The ALJ gave Dr. Hawkins opinion significant weight for the diagnosis of Plaintiff's borderline intellectual functioning. AR 24. That opinion was shared by both Dr. Akins and Dr. Hawkins who opined that Plaintiff suffered from

12

borderline intellectual functioning. AR 25, 47.  The ALJ, however, discounted Dr. Hawkins' opinion that Plaintiff could not work in a competitive work setting because it conflicted with more specific statements by Dr. Akins and more detailed evidence in the record.

Dr. Akin testified that Plaintiff's intellectual functioning does not meet or equal a listing. AR 46. With respect to work related functioning, Dr. Akin testified that Plaintiff's impairments would not exceed mild to moderate limitations.  AR 47. While Plaintiff would have some difficulty with complex tasks, Dr. Akins testified that those tasks are "not precluded" based on Plaintiff's level of functioning.  AR 47. The ALJ also noted the reports and statements made by Plaintiff's teachers who the ALJ reasoned had interacted and observed Plaintiff over a significant period. AR 25, 262-291. Plaintiff's records demonstrated that he was advancing towards completing high school, and a questionnaire completed by his teacher showed Plaintiff's primary difficulties were in reading and comprehending written materials. AR 24, 262-269.  In August 2012, Plaintiff's Individualized Education Plan showed Plaintiff as being strong in the area of math that he enjoyed doing math, and he participates well in (math) class.  AR 274. It was proper for the ALJ to rely on this more detailed evidence of Plaintiff's academic functioning. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (The opinions of non-examining physicians may serve as substantial evidence when the opinions are "consistent with independent clinical findings or other evidence in the record.").

Second, an ALJ need not accept the opinion of a physician if that opinion is inadequately supported "by the record as a whole." *Batson v. Commissioner of Social Security Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004).  Typically, the lack of evidence supporting a physician's opinion is a legitimate basis to reject it. *See, e.g., Edlund v. Massanari*, 253 F.3d 1152, *as amended on reh'g* (9th Cir. 2001) (rejecting treating physician's opinion that claimant suffered from a herniated disk where no MRI scan ever showed a herniated disk); 20 C.F.R. § 404.1527(c)(3) (in determining the weight to give to the opinion of a treating physician, the ALJ should consider factors such as the degree to which the opinion is supported by relevant medical evidence).  When compared with Plaintiff's school records, the ALJ found Dr. Hawkins' report was vague on details supporting her recommendation for a supported work environment because it was inconsistent with Plaintiff's numerous independent activities. AR 25. This was a valid reason for giving less weight to Dr. Hawkins' opinion. *See Batson,* 359 F.3d at 1195 (an ALJ may properly reject a physician's opinion

13

that is conclusory and unsupported by objective medical findings); *see also* 20 C.F.R. §§ 404.1527(c)(3) (in weighing a medical source opinion, the ALJ will consider the explanation and medical evidence the doctor provides in support of his opinion, as well as the consistency of the opinion with other evidence in the record). Indeed, records show Plaintiff is independent in his activities. He is involved in cross country track and other sports; he was independent in personal care, did not need supervision to ensure his safety, and he could remain focused in an activity for 15 minutes, but if it was of interest to him, his attention may be longer. AR 312. This evidence provided valid support for the ALJ's determination that Dr. Hawkins' conclusory recommendation was not consistent with other independent evidence in the record.

Lastly, the ALJ appropriately found that Dr. Hawkins' speculation regarding Plaintiff's employability in a competitive work environment carried no probative weight. AR 25. Whether a claimant can work competitively is an issue reserved specifically to the Commissioner, and a physician's opinion on this issue is not entitled to special significance. 20 C.F.R. §404.1527(d)(1); SSR 96-5p, 1996 SSR LEXIS 2, 1996 WL 374183 (July 2, 1996) (medical source opinion about whether an individual is unable to work, even when offered by treating source, is not entitled to controlling weight or given special significance); *see also Jackson v. Colvin*, No. 1:14-cv-01573-EPG, 2016 U.S. Dist. LEXIS 24703, 2016 WL 775929, at *10 (E.D. Cal. Feb. 29, 2016) (statement offered by a physician that a plaintiff is unable to work not entitled to any special significance because it constitutes an opinion on issue reserved to the Commissioner); *Henry v. Colvin*, No. 1:15-cv-00100-JLT, 2016 U.S. Dist. LEXIS 5056, 2016 WL 164956, at *15 (E.D. Cal. Jan 14, 2016) (ALJ properly gave minimal weight to physician's opinion that claimant was unemployable; determination of whether a claimant is disabled is reserved for the Commissioner); *cf. McLeod v. Astrue*, 640 F.3d 881, 884-85 (9th Cir. 2010) (law reserves disability determination to Commissioner). Therefore, the ALJ properly gave Dr. Hawkins' opinion regarding Plaintiff's employability no controlling weight.

Ultimately, the ALJ weighed the evidence and gave legally sufficient reasons for rejecting portions of Dr. Hawkins' opinion. Dr. Hawkins' statements that Plaintiff would have difficulty keeping competitive employment were conclusory and inconsistent with more detailed evidence in

the record. The ALJ was entitled to reject that unsupported opinion in favor of the opinion of the Dr. Akins whose opinion was supported by substantial medical evidence in the record.

### 3. The ALJ Gave Sufficient Reasons to Reject Plaintiff's Subjective Testimony

Plaintiff next contends the ALJ failed to provide legally adequate reasons to reject his credibility. (Doc. 15 at 11-14). The Court disagrees.

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings and provides clear and convincing reasons for doing so. *Id.* The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence."); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight."). Other factors an ALJ may consider include: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Here, because there is no allegation of malingering and the ALJ found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" (AR 24), the ALJ's reasons must be clear and convincing. *Brown-Hunter v. Colvin*, 798 F.3d 749, 755 (9th Cir. 2015). Even if "the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony," if he "also provided valid reasons that were supported by the record," the ALJ's error "is harmless so long as there remains substantial evidence supporting the ALJ's decision

15

and the error 'does not negate the validity of the ALJ's ultimate conclusion.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*quoting Batson*, 359 F.3d at 1195).

The ALJ provided several reasons for rejecting Plaintiff's subjective complaints including the overall evidence in the record, Plaintiff's daily activities and prior work history, and Plaintiff's own statements supporting his ability to work competitively. AR 24-25. The Court finds that the ALJ's reliance on these factors is a clear and convincing reason to reject Plaintiff's credibility.

The ALJ first noted that Plaintiff has no physical limitations that prevent him from working at any exertional levels. AR 24. The ALJ stated that treatment notes indicate that Plaintiff is active and healthy with no severe physical medical impairments. AR 24. This conclusion is supported by Plaintiff's reported activities of cross country running and soccer. AR 379. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (holding that objective medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects). With respect to Plaintiff's cognitive functioning, the ALJ noted that Plaintiff was diagnosed with Attention Deficit Disorder in 1999, and treated with medication, but was no longer taking medication. AR 24, 69, 244-348, 356-358, 364-368. Evidence of conservative treatment, or in this case, no treatment, is sufficient to discount a claimant's testimony regarding severity of an impairment. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) *citing Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).

Second, the ALJ noted that Plaintiff's excessive symptom testimony was undermined by repeated evidence that Plaintiff's daily functioning was consistent with an ability to perform competitive work. AR 25. Plaintiff namely challenges the ALJ's finding that he "graduated" from high school as an indicator that he is not disabled. According to Plaintiff, he "did not graduate from high school in the traditional sense because he was waived from the exit exam." (Doc. 15 at 13). Whether Plaintiff received an exemption in order to graduate high school does not materially alter the ALJ's findings that Plaintiff's daily activities were consistent with the RFC. To the contrary, Plaintiff's ability to complete high school with certain modifications supports the ALJ's findings that Plaintiff is able to perform the full range of work if limited to "no more than simple, repetitive 1-step tasks requiring no more than rudimentary reading, writing, and arithmetic skills." AR 23.

It was particularly proper for the ALJ to discount Plaintiff's credibility based on the specific daily activities performed here. *Orn v. Astrue*, 495 F.3d at 638. While Plaintiff testified that forgetfulness would prevent him from working, the ALJ noted that Plaintiff's actual daily activities and social interactions went far beyond Plaintiff's stated limitations. AR 25. The ALJ set forth in extensive detail Plaintiff's day-to-day activities, including his personal chores, ongoing educational achievements (completing high school and being accepted into a modified college program), independent travel using public transportation, regular independent attendance at church, ability to take care of his pet, and the ability to perform a limited cafeteria helper position while in high school. AR 25. When asked, Plaintiff also testified that he could complete the basic functions of "a nut sorter" if asked to do so. AR 25. Plaintiff's admitted daily activities go far beyond those that plausibly demonstrate he is unable to perform simple, repetitive one-step tasks.

Although Plaintiff is correct that he need not "vegetate in a dark room," an ALJ may consider whether the claimant engaged in daily activities inconsistent with the alleged symptoms, and whether the claimant's daily activities indicate capacities that are transferable to the work setting. *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012). While many home activities may not be easily transferable to a work environment, here, the ALJ evaluated Plaintiff's activities that require work functions such as maintaining concentration, analyzing information, and using basic reading and math skills. The ALJ noted that Plaintiff's ability to graduate from high school, participate in sports and volunteer work (at his church), and independently take public transportation implies some aptitude on the part of Plaintiff. AR 25. *See Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (An ALJ is entitled to drawn inferences logically flowing from the evidence). Thus, the ALJ's analysis of Plaintiff's daily activities was sufficiently clear and convincing enough to survive appellate review.

Given the above, the ALJ provided clear and convincing reasons that are supported by substantial evidence when concluding Plaintiff's subjective symptom testimony was not credible. The ALJ clearly identified what testimony she found not credible and what evidence undermined Plaintiff's complaints. *Lester v. Chater,* 81 F.3d at 834. If the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas,* 278 F.3d at 959. Accordingly, the ALJ's credibility findings are free of legal error.

///

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff, Christopher Connolly.

IT IS SO ORDERED.

Dated: **September 15, 2016**          /s/ *Barbara A. McAuliffe*
                                           UNITED STATES MAGISTRATE JUDGE